1  ROSS L LIBENSON (State Bar No. 181912)
   LIBENSON LAW
2  1939 Harrison Street, Suite 917
   Oakland, CA 94612
3  Telephone: (510) 451-4441
   Email ross@libensonlaw.com
4  *Local Counsel*

5  MAX FOLKENFLIK
   FOLKENFLIK & MCGERITY
6  1500 Broadway, Suite 810
   New York, NY 10036
7  Telephone: (212)757-0400
   Email mfolkenflik@fmlaw.net
8  (*applying for admission pro hac vice*)
   *Attorneys for the Plaintiff*

9

10              **UNITED STATES DISTRICT COURT**
                **CENTRAL DISTRICT OF CALIFORNIA**
11
   _____
12

| | |
|---|---|
| 13  BETTER NUTRITIONALS, LLC, a California Limited Liability Company, | Case No. |
| 14 | |
| 15                    *Plaintiff*, | **COMPLAINT FOR STATUTORY AND COMMON LAW TORTS, INCLUDING SECURITIES FRAUD AND COMMON LAW FRAUD, VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT, MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE DEFEND TRADE SECRETS ACT, BREACH OF CONTRACT, AIDING AND ABETTING, AND, AS TO DLA PIPER LLP (US), LEGAL MALPRACTICE AND BREACH OF FIDUCIARY DUTY** |
| 16      .     vs. | |
| 17 | |
| 18  GOLI NUTRITION, INC, DEEPAK AGARWAL, MICHAEL BITENSKY, VMG PARTNERS, VMG PARTNERS V, L.P, VMG PARTNERS IV, LP, MERICAL INC.,DLA PIPER LLP (US). | |
| 19 | |
| 20 | |
| 21                  *Defendants*. | |
| 22 | |
| 23 | |
| 24 | |
| 25 | **DEMAND FOR A JURY TRIAL** |
| 26 | |

27

28         Plaintiff Better Nutritionals, LLC ("Better Nutritionals"), brings this complaint

_____

COMPLAINT

against Defendants Goli Nutrition, Inc. ("Goli"), Deepak Agarwal ("Argarwal"), Michael Bitensky ("Bitensky")(Goli, Agarwal, Bitnsky and their affiliated entities are collectively referred to as the "Goli Defendants"),  VMG Partners, VMG Partners V, L.P, VMG Partners IV, LP (hereinafter the "VMG Defendants"), Merical Inc. ("Merical") and DLA Piper LLP (US) (hereinafter "DLA Piper"), and alleges as follows:

## INTRODUCTION

1.     Goli is a retail seller and marketer of nutritional gummy supplements founded and at all relevant times operated by Deepak Agarwal and Michael Bitensky.  Goli sells a range of gummy supplements, but its best-selling products contain apple cider vinegar ("ACV").  Because Goli's gummy products are classified as "Dietary Supplements," they are required to be manufactured is factory that complies with stringent federal and state regulations.  In 2018, Goli sought out Plaintiff Better Nutritionals because it had an governmentally approved manufacturing facility in Gardena California capable of producing the gummy products Goli required.

2.     From the start of its relationship with Better Nutritionals, Goli committed to make Better Nutritionals its exclusive manufacturer, and to purchase as many gummies as Better Nutritionals could manufacture to meet explosive consumer demand for Goli's products.  For of the first three years, the relationship was smooth and very profitable for Better Nutritionals.  Goli provided sales forecasts or purchase orders, and Better Nutritionals immediately commenced and quickly completed production based on those forecasts and purchase orders.  Until the summer of 2021, Goli would rouitinely and promptly take delivery and pay for the products.    Better Nutritionals maximum production output at the Gardena facility was approximately 400,000 bottles a month.  But Goli was projecting a need for *millions of bottles a month*, and, accordingly, advised Better Nutritionals that Better Nutritionals would have to increase its production capacity significantly.  Accordingly, during 2019

Better Nutritionals invested heavily to meet Goli's demand and bring the capacity up to 1,200,000 bottles per month, but Goli demand was for 12-15 million bottles per month.

3.      To continue to meet Goli's projected demand, in 2020 Goli convinced Better Nutritionals to open a new approximately 420,000 square foot facility in Norco California.  The Norco facility required a multi-million-dollar lease deposit to the landlord, tens of millions of dollars of capital improvements and nearly $70 million in equipment to make it compliant with state and federal requirements for a Dietary Supplement manufacturing facility.  Goli ensured that Better Nutritionals would bear the risk of the hundreds of millions of dollars of investment in and operation of the Norco facility.

4.      But Goli also coveted the profits that Better Nutritionals was making and developed a scheme by which it could obtain for itself the profits that would otherwise accrue to  Better Nutritionals. In furtherance of that scheme, Goli engineered a fraudulent stock swap  transaction where Goli obtained  a 25% interest in Better Nutritionals in exchange for a 3% interest in Goli.  Those interests were fraudulently claimed to be equal in value, but the Goli Defendants knew that Goli's 25% interest in Better Nutritionals was substantially more valuable than Better Nutritionals' 3% interest in Goli.

5.      Worse yet, the agreements for Goli's purchase of the 25% interest in Better Nutritionals contained no restrictions on Goli or its ability to shift production away from Better Nutritionals, but the Stock Swap agreements contained onerous restrictions, including in particular, onerous overbroad restrictions  on the ability of Better Nutritionals to manufacture for other customers who wanted to purchase gummy products from Better Nutritionals .  Further, Goli insisted that Better Nutritionals The  Defendant DLA Piper represented **both** Better Nutritionals and Goli in the negotiation and drafting of these agreements, but in fact DLA Piper only acted in the interests of Goli, and abandoned any duty to its other client, Better

Nutritionals. Indeed, Safraz Ishmael, a relative of Defendant Agarwal, was DlA Piper's Partner **in charge of DLA Piper's engagement by Better Nutritionals.**

6.      In 2021 Agarwal and Bitensky, provided Better Nutritionals with massive formal sales forecasts and written purchase orders when Goli knew it would not, and could not meet those projections and Goli knew it would not pay Better Nutritionals for the products it had ordered. In July 2021, Goli sent written purchase orders for $281 million worth of product, and gave a verbal purchase order for 300 million bottles to be used for finished product (100 million bottles per year for 3 years). **But Goli never intended to pay for all of the product it ordered, or to pay for the bottles it ordered.** As of this writing Goli has refused to pay for $180 million of product it ordered nor has it paid anything for the 300 million bottles it ordered. In August 2021, without any prior warning, Goli informed Better Nutritionals that it had cut its projections by over 90%.

7.      Goli left Better Nutritionals in a desperate position.  It had induced Better Nutritionals to expose itself to well over $100 million of liabilities in the construction and operation of the Norco facility  in reliance on Goli's ever-larger sales forecasts and purchase orders.  Goli had induced Better Nutritionals to commit over 90% of its production capacity to Goli, had forced it to terminate relationships with existing customers and severely limited its ability to service other potential customers. By fraudulently inducing Better Nutritionals to allocate nearly all of its production capacity to Goli, by fraudulently misrepresenting and by breaching its agreement to purchase all that Better Nutritionals could produce, as well as specific purchase orders Goli had issued, Goli exposed Better Nutritionals to severe liability from a host of third parties, jeopardizing the future of the company. and the reputation of the founders in in a close knit industry.  As we show further below, however, Goli had not finished its acts designed to sabotage its former "partner" and to capture for Goli all the profits Better Nutritionals could earn.

8.     In October 2021 VMG Partners closed on a $100 million investment in Goli, and secured two of seven board seats along with significant contractually specified control over Goli.  Promptly thereafter, embarked on a a new phase of its scheme:   to steal Better Nutritionals trade secrets and transfer them to another competing manufacturer, Defendant Merical.  Once the Goli Defendants  and the VMG Defendants had assured themselves that Merical was capable, with the use of Better Nutritionals trade secrets, to produce an acceptable product for Goli,  in the fall of 2022 Goli started shifting production from Better Nutritionals to Merical.

9.     In 2022 the end game for the Goli Defendants and the VMG Defendants became clear.  Goli embarked on a plan that would force Better Nutritionals to sell the company at a drastically insufficient price to a buyer **committed to expanding the business of Goli**.  In that way, Goli could reap the benefits of an effective vertical integration, and shift manufacturing profits from Better Nutritionals to Goli.  The scheme did not work.  Instead Better Nutritionals determined that interests of the Company are best served by seeking to recover the hundreds of millions of dollars it lost because of the fraudulent, illegal and tortious acts of the Defendants.

## THE PARTIES

10.     Plaintiff Better Nutritionals, LLC, is a California Limited Liability Company with its principal place of business and headquarters at 3390 Horseless Carriage Road, Norco, CA, 92860.  Better Nutritionals is a contract manufacturer of nutritional gummy products.

11.     Defendant Goli Nutrition, Inc. is a corporation organized under the laws of Canada, with its principal place of business at 1 Westmount Square, Suite 1500, Westmount, H3Z2P9, Quebec, Canada, and under the laws of the State of Delaware. Goli is a retail seller and marketer of specially manufactured nutritional supplements, including gummies. Starting in 2018, and until recently, Better Nutritionals was the sole manufacturer of the gummy products sold by Goli.

12.     Defendant Deepak Agarwal is a co-founder of Goli and served as its Co-Chief Executive Officer /Co- President at all times relevant to this complaint.  On information and belief, Agarwal resides in Montreal, Québec, Canada.

13.     Defendant Michael Bitensky is a co-founder of Goli, and served as its Co-Chief Executive Officer /Co- President at all times relevant to this complaint.  On information and belief, Bitensky resides in Montreal, Québec, Canada.

14.     Defendant VMG Partners is a private equity investment firm that has its headquarters at 39 Mesa Street, Suite 310, San Francisco, CA 94129.  VMG operates through separate investment funds each of which has a specific pool of investment capital and a specific portfolio of investments.  Defendant VMG Partners V, L.P, ("VMG Partners V") was begun in March 2021 with $850 million in capital to invest in health and wellness brands such as Goli.  On information and belief, VMG Partners V is also an investor in Goli Defendant VMG Partners IV L.P.(" VMG Partners IV") is an investor in Goli and has a right to receive profits from that investment. Two members of VMG Partners IV's management team, who are also partners in VMG Partners, sit on Goli's board of Directors..

15.     Defendant Merical is a manufacturer of private label dietary supplements with its manufacturing facility at 233 East Bristol Lane, Orange, CA 92865.  Merical began producing Goli gummy products in October 2022.

16.     Defendant DLA Piper is the United States affiliate of an international law firm with its headquarters at 444 West Lake Street Suite 900 Chicago, IL 60606. At all relevant times, DLA Piper served as counsel for **both** Plaintiff Better Nutritionals and for Defendants Goli, Agrewal and Bettinsky.

### JURISDICTION AND VENUE

17.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1338(a), and 28 U.S.C. § 1332, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 as well as pendant jurisdiction over claims based on state law.

18.     Venue is proper in this District pursuant to 28 U.S.C. 1391(c) in that Defendants are subject to personal jurisdiction in this District.

## FACTUAL BACKGROUND

### A. Better Nutritionals' Early Success

19.     Husband and wife Sharon and Odelya Hoffman founded Better Nutritionals in 2015 as a contract manufacturer of nutritional gummy products for third parties, as well as for its own consumer line of gummy vitamins, "Vitamin Friends."

20.     Nutritional gummies are nutrient-enriched chewable dietary products similar to soft candy.  Gummies are an increasingly popular alternative to traditional multi-vitamins and dietary supplements in pill form because they are easier to ingest and have appealing textures and flavors.  As of 2020, nutritional gummies were a $16 billion industry expected to grow at a significant annual rate over the next decade owing to increasingly health-conscious consumers.

21.     Better Nutritionals quickly made a name for itself by manufacturing innovative, high-quality products and by becoming one of the most-highly certified supplement manufacturers in the world.  Within a few years, Better Nutritionals attracted a significant number of top-tier domestic and foreign clients, including Abbott Labs, Vita Yummy, Charlotte's Web, Pharmacare (Sambucol), Vesco Vitamins, and Premama Wellness.

22.     Manufacturing nutritional gummy products is expensive large-scale chemistry, requiring precise control over a complex and resource-intensive production process.  At the front end of the manufacturing process, Better Nutritionals expends significant resources and capital to prepare for production, often before receiving full payment.  Thus, as is common in the industry and its commercial partners know, Better Nutritionals is expected to rely and does heavily on the accuracy — and truthfulness — of the purchase orders and sales forecasts it receives from its clients.

23.     By late 2018, Better Nutritionals had around fifteen employees and could manufacture approximately 400,000 bottles of nutritional gummy products each month out of its small factory in Gardena, California, earning annual revenues of approximately $4,000,000 and annual profits of $1,000,000.

**B. Goli Enlists Better Nutritionals as Its Sole Manufacturer**

24.     Deepak Agarwal and Michael Bitensky founded Goli in 2017 as a retail seller of specially manufactured nutritional supplements, including gummies.

25.     Goli secured substantial financial backing to develop and market the world's first apple cider vinegar gummy ("ACV Gummy"), which it linked to a range of health benefits, including digestion, weight management, immunity, energy, and improved complexion.

26.     In late 2018, Goli enlisted Better Nutritionals to be the sole manufacturer for the ACV Gummy.  Before starting production, Better Nutritionals provided Goli with detailed per-unit production costs that included Better Nutritionals' costs, such as ingredients and materials, and costs imposed by third parties, such as packaging suppliers.  Goli did not dispute these production costs.

27.     The Parties agreed to payment terms in November of 2018.  Goli agreed to pay Better Nutritionals an agreed price  per bottle (which included ingredients, supplies, and manufacturing), to advance half of the total cost for each order, and to pay the remaining amount due when Better Nutritionals released finished and final batches of gummies from its facility for pickup by Goli (batches that would vary in quantity depending on Better Nutritionals' production capacity).  These payment terms required Better Nutritionals to incur the full expense of manufacturing the gummies with only 50% of the total payment in its coffers.  Prompt pickup and payment is standard in the industry, both because the products by government regulation have a limited shelf life, and because the payment of the balance was crutial to Better Nutritionals business.  Thus, Goli's prompt pickup and payment after was critical to Better Nutritionals.

28.     With the payment terms in place, Goli placed its first purchase order for 100,000 bottles, with a second order (contingent on Goli's satisfaction with the first) to follow for 300,000 bottles.  In fact, Goli was so pleased that it increased its second order from 300,000 bottles to 600,000 bottles but negotiated a lower price-per-bottle.  This lower price remained constant for years, despite rising supply chain costs and Goli's ever-increasing demand for more product.  Goli's third order, coming shortly after the first two, was for 1,000,000 bottles.  Better Nutritionals manufactured and Goli accepted and paid for each order pursuant to the terms of the Parties' agreement.

29.     Goli described Better Nutritionals' finished product as "simply amazing" and "absolutely perfect."  In May of 2019, Agarwal assured Better Nutritionals' co-founder and CEO, Sharon Hoffman ("Hoffman") on a telephone call that Goli would buy every bottle of Goli gummies Better Nutritionals could produce and even boasted that Better Nutritionals could not produce bottles fast enough to meet Goli's needs.  Agarwal frequently repeated these statements to Hoffman on future telephone calls and over Telegram Messenger, emphatically imploring Hoffman to keep producing greater quantities as quickly as possible.

30.     Following Goli's promise to buy every bottle Better Nutritionals could produce, the Parties shifted to a demand-based ordering process typical in the manufacturing industry.  Goli would submit "sales forecasts" and "purchase orders" at regular intervals (typically monthly) that it expected Better Nutritionals to immediately act upon by reserving production capacity, ordering ingredients, beginning production, and planning for future production.  In general, retail sellers like Goli use this process to minimize stocked inventory, which does not generate value, and avoid paying for warehouse space.

31.     This process repeated over and over again.  Better Nutritionals would receive a sales forecast and purchase order from Goli and immediately start production.  All the while, Goli communicated only one message: that it needed more and more product.  Better Nutritionals relied on Goli's promise and

representation that it would pay for every bottle of gummies that Better Nutritionals could produce.  As it did so, Better Nutritionals continued to take on greater upfront risk to manufacture a substantially higher volume of gummies at a rapidly increasing pace.

32.     Goli's sales forecasts exploded.  In May of 2019, Goli projected a June order of 600,000 bottles per month with a steady monthly rise to approximately 2 million bottles per month by December of 2019.  In August of 2019, Goli submitted a purchase order for a remarkable 50 million bottles for delivery "On-Going Up To Dec 31, 2020," which equates to an average of 2.9 million bottles per month.  To produce this quantity, Better Nutritionals understood that it needed to expand its current manufacturing capacity five-fold, as it had reached the limits of its manufacturing capacity at its small Gardena facility, over 80% of which was already dedicated to Goli's needs.  Goli urged Better Nutritionals to find a way to expand its capacity, and to do so as soon as possible.  As it began evaluating opportunities to scale-up, Better Nutritionals relied on Goli's history of timely payment for orders placed to date, representations (often made directly by Agarwal) of sustained high demand in the future, and Agarwal's promises to pay for every bottle of gummies that Better Nutritionals could produce.

33.     Goli proposed that the Parties work together to radically expand Better Nutritionals' production capacity to meet Goli's purported needs. In order to do so, Better Nutritionals agreed to open a new facility in Norco California that was capable of producing the amounts that Goli was committing to purchase.

34.     Through a series of complex contracts with Better Nutritionals and third parties in early 2020, Goli engineered a multi-pronged plan to ensure that Better Nutritionals would become almost entirely dependent upon Goli. In the negotiation of these contracts, both Goli and Better Nutritionals were represented by Defendant DLA Piper despite the obvious conflicts of interest presented by the dual representation. In breach of its fiduciary duties to Better Nutritionals, Defendant

1   DLA Piper prepared agreements that dramatically favored the interests of Goli and

2   disregarded the interests of Better Nutritionals. A relative of Defendant Arguwal,

3   Safraz Ishmael, the DLA Piper Partner in charge of that firm's **engagement by Better**

4   **Nutritionals,** was working behind the scenes to advance the interests of Goli.

5       35.    In the lease for a new facility in Norco, California (the "Norco Lease"),

6   although Better Nutritionals wanted and expected tto be the tenant, Defendant

7   Agarwal said that  Goli should be identified as the "tenant" and Better Nutritionals

8   was identified as a "guarantor.  Similarly, in contract for manufacturing-related IT

9   services and equipment in that facility with Atos IT Solutions and Services, Inc.

10  ("Atos"), it normally would be expected that Better Nutritionals would be the

11  customer and Goli would be the guarantor.  But Goli was identified as the

12  "customer" and Better Nutritionals was again identified as a "guarantor."  Better

13  Nutritionals would be the sole occupant of the new facility and would be the sole

14  user of the IT services and equipment, but as a result of the contracts, Goli obtained

15  title to the equipment, and control over Better Nutritionals occupancy, even

16  thoughBetter Nutritionals made all payments for rent, and paid $34 million for the

17  equipment.

18      36.    Defendant Agrawal promised that the lease and title to the equipment

19  would be transferred to Better Nutritionals on request, but nothing in the governing

20  contracts protected Better Nutritionals' right to obtain title to the equipment or the

21  protection that a direct tenancy would have afforded.    When Better Nutritionals

22  requested transfer of the tenancy and the title to the equipment, Defendant Agrawal

23  refused.

24      37.    At the time, Better Nutritionals was a relatively small business that

25  could serve its pre-Goli customers in its 18,000 square foot Gardena facility, for

26  which its monthly rent was $10,000.  The facility at Norco was approximately

27  420,000 square feet, with a monthly rent of $350,000 – 35 times what Better

28  Nutritionals had paid at Gardena.

38.     Better Nutritionals paid rent for the Norco facility, directly to the landlord as well as paying the $3,000,000 security deposit, and $30,000,000 in capital improvements needed to bring the Norco facility online.  Better Nutritionals, not Goli, paid Atos $34 million for the equipment and IT services.

39.     Goli continued to submit ever-increasing sales forecasts and purchase orders and to pay for Better Nutritionals' finished product.  There was no cause for Better Nutritionals to question whether these orders and sales forecasts reflected actual consumer demand for Goli's products; the proof seemed to be in the payments it received.  Indeed, Goli repeatedly told Better Nutritionals that it was facing substantial backlogs in filling orders for Goli gummies, at least in part because, as Argawal told Sharon Hoffman, Goli was the "#1 Best Selling Health Brand on Amazon."

40.     Goli engaged Centerview Partners in 2020 to explore a sale of Goli.  . In January 2020 Goli proposed what it referred to as a "stock swap" in  which Goli would receive a 25% interest in Better Nutritionals and Sharon Hoffman would receive a 3% interest in Goli, Inc. (the "Stock Swap").   Goli, Agrewal and Bitensky represented that the 3% interest in Goli Inc. was equal in value to the 25% in Better Nutritionals.  That representation was knowingly false when made.   In fact, the 25% interest in Better Nutritionals was far more valuable than the 3% interest in Goli.

41.     In January 2020 Sharon and Odelya agreed to the Stock Swap   The Stock Swap was memorialized in late 2020 in a series of complex agreements between Sharon and Odelya Hoffman on one hand, as owners of Better Nutritionals, and certain entities controlled by Defendant Agrewal, and as well as certain entities controlled by Defendant Bitensky,  and Goli.  Goli, Agrewal and Bitensky represented that the 3% interest in Goli remained equal in value to the 25% in Better Nutritionals.  That continued representation was knowingly false when made.   In fact, at all relevant times the 25% interest in Better Nutritionals was far more valuable than the 3% interest in Goli.  Goli has concealed its financial statements and

audit reports from Better Nutritionals.  On information and belief, those financial statements and audit reports would contain further evidence of Goli's fraud.

42.     The agreements memorializing the Stock Swap required Better Nutritionals to give Goli a right of first refusal should Better Nutritionals desire to allocate production capacity to another client.  Further, Goli insisted on maintaining a "buffer capacity" over and above the capacity needed based on Goli's sales forecasts.  The buffer capacity was 10% that Goli could immediately demand, plus an additional 30% buffer capacity above any given sales forecast.  As a result, Better Nutritionals was required to keep idle 100 % of  Goli's forecasted need plus an additional 40% over and above the forecasted needs.

43.     At this time, there was a scarcity in gummy manufacturing capacity in the market.  But by its agreements with Goli, Better Nutritionals was prohibited from using any excess capacity to manufacture for any purchaser who sold "Competing Products." Competing Products is defined in the agreements with incredible and unnecessary overbreadth.

44.     The agreements state:

"**Competing Products**" means any products that are the same as or substantially similar to Goli Products. A product will be considered the same as or substantially similar to Goli Products if it contains the same or substantially similar active ingredient(s) as those in Goli Products or the same main marketed ingredients as Goli Products.

45.     Under the agreements Goli insisted that Better Nutritionals terminate existing client relationships and forgo new relationships.  Better Nutritionals terminated its relationship with Pharmacare (Sambucol) and Vesco Vitamins LLC, for which Better Nutritionals had manufactured a line of gummy products. Better Nutritionals also turned down substantial business opportunities from major

marketers of nutritional products, including Nestle, Garden of Life, Nature's Bounty, and Sports Research.

46.     DLA Piper served as counsel for both Goli and Better Nutritionals in the negotiation of those agreements.  In violation of its fiduciary duties to Better Nutritionals, DLA Piper failed to include any limitation on the breadth of these over-broad restrictions, any limitation on these obligations, or any protections for Better Nutritionals from abuse by Goli.

47.     Further DLA Piper failed to include in these agreements any requirement that Goli purchase products exclusively from Better Nutritionals, or that the "buffer be reduced or suspended if Goli failed to meet certain product purchase threshholds.  Nor did the Stock Swap agreements provide any other protections for Better Nutritionals such as a minimum "take or pay" commitment, that would limit Better Nutritionals loss in the event that Goli failed to meet its projected purchases.  Those limitations on Goli would have been expected in agreements of this type that had been negotiated at arm's length by different attorneys representing the competing interests of each of the parties.

**D. Better Nutritionals Scales Up to Keep Up With Goli's Sales Forecasts**

48.     Goli, Agarwal, and Bitensky knew the effort, expense and risk that Better Nutritionals faced to meet Goli's increasingly large production demands.  In 2021 alone, Better Nutritionals hired *600* employees to keep up with Goli's sales forecasts, yet staff still routinely worked overtime.

49.     Better Nutritionals also spent heavily on the supplies and services necessary to manufacture Goli products.  Of course, each dollar represented further exposure to third-parties, because Better Nutritionals was responsible for funding these materials and services, regardless of whether Goli changed its production demands.  In 2021, when Goli accounted for 93% of Better Nutritionals' revenue, Better Nutritionals paid over $200,000,000 to over 500 vendors to obtain, among

other things, the raw ingredients, packaging materials, and the technical and logistical support for Goli products.

50.    Better Nutritionals' supply orders eventually became so large that some suppliers asked Better Nutritionals to substantiate the need for its orders by providing a matching purchase order from Goli.  At Better Nutritionals' request, Goli supplied a purchase order, which Better Nutritionals provided to its suppliers.  Goli continued to submit sales forecasts that Better Nutritionals would immediately act upon by reserving production capacity, ordering ingredients, and beginning production.  Goli insisted that Better Nutritionals maintain enough raw materials for 3 months' manufacturing need (based on Goli's projections) due to the supply chain challenges in 2021following the Covid pandemic.

51.    In order to meet Goli's projections and representations, Better Nutritionals' projected production capacity for Goli products would continue on a straight-line increase throughout 2021.  Better Nutritionals' "Total Practical Capacity" of 4,759,772 bottles per month in April of 2021 was set to increase to 6,310,194 bottles in May, 7,180,538 in June, 8,225,017 in July, 9,49,718 in August, and to a staggering 12,762,753 by December.  Based on Goli's projections and promises, Better Nutritionals sought to reach a peak manufacturing capacity of ***28 million*** bottles per month by the third quarter of 2022.

52.    In July of 2021 Goli submitted a purchase order for ***75 million*** bottles July 16, 2021, for which Goli committed to pay Better Nutritionals $281,000,000.  At the time that this purchase order was submitted, Goli, its Board of Directors and the VMG entities were aware that Goli could not use and would never pay for all of the product ordered.  Ultimately Goli refused to take delivery or pay for $160 million of that purchase order.

53.    In addition, also in July, Goli gave a verbal purchase order another for *300 million* bottles, for which Goli committed to pay Better Nutritionals $1,125,000,000 over a three year period. Agarwal and Goli's Controller communicated the 300 million bottle order directly to Better Nutritionals' COO, as well as to the owner of the bottle manufacturer, Comar.  Goli, its Board of Directors and the VMG entities were aware of that order and they were also aware that Goli would never need anything close to that number of bottles in the periods specified.. At that time, Defendant Agarwal stated that the deal with VMG had been reached and that the parties were in the process of negotiating the final documents.

**E.    Goli Suddenly Radically Downsizes its Orders and Refuses to Take Delivery or Pay for Product it had Ordered.**

54.    In July, Defendant Agarwal complained about a "shortfall" in Better Nutritionals production of two  to three million bottles of gummies.  A few weeks later,  Goli requested a meeting with Better Nutritionals, which occurred on August 10, 2021.  Agarwal, Bitensky, Hoffman, and Better Nutritionals' CFO and COO attended.  During the meeting, Goli announced that it would cut its sales forecast by a staggering **56%**, from Nine million to four  million bottles in August, and from 12 million bottles to 6.4 million bottles in December.  For 2022 the numbers dropped from 15 million bottles per month to 6-7 million bottles per month.   Goli  provided a revised forecast reflecting this cut.  Hoffman wrote to Agarwal at the time that the news was "shocking."

55.    Goli also made clear that *it would not honor* the full July purchase order and announced to that it held a surplus in its warehouses of *12 to 14 million bottles*. In May, June and July Better Nutritionals only produced a total of 12,910,285 bottles.  At some point **long prior to July 2021, Goli clearly was aware that the projections** being submitted to Better Nutritionals and on which Better Nutritionals was reasonably relying, **were knowingly false and a fraud on Better Nutritionals**. Goli knew before May 2021 that *it was unable to sell any* of the additional bottles

that Better Nutritionals was producing in May, June and July.  In reliance on Goli's fraudulent statements, Better Nutritionals incurred substantial costs that would have been avoided had Goli not made its knowingly false projections and submitted knowingly fraudulent  purchase orders that it never intended to honor.

56.    Agarwal stated in August 2021 that mearly a few months earlier, in June of 2021, he had just learned that consumer demand had dropped, which he attributed to a hodge-podge of unverified issues with Facebook's advertising algorithm.  On information and belief Goli was well aware of a drop in consumer demand long before that.  Goli's own emails and purchase orders confirm its deception.  For months, it told Better Nutritionals that Goli faced substantial customer backorders. Those representations were knowingly false.  Better Nutritionals reasonably relied on those representations and incurred significant costs for the purchase of ingredients as well as related labor and other manufacturing costs.

57.    Sharon promptly wrote to Goli to advise it that based on Goli's new information Better Nutritionals had substantial excess capacity which it sought to use to manufacture products for other customers.  Better Nutritionals agreed to make Goli its first  priority for production of product for Goli was  impacted by producing for other customers.  Nonetheless, Goli continued to insist that Better Nutritionals keep a 40% "buffer" capacity over the amount being forecast by Goli.  Goli also insisted that "Better Nutritionals will not onboard Goli competitors or use the Goli mold/bottle."  Because of the onerous definition of "Goli competitors," that restriction severely limited the customers Better Nutritionals could work for.  In light of Goli's July oral purchase order for 300 million bottles, the continued insistence on the limitation on the use of the Goli mold/bottle exposed Better Nutritionals to substantial penalty payments that Better Nutritionals was not able to mitigate by using those bottles for other customers.

58.    By the summer of 2021, VMG had still not finalized its investment in Goli.  While Goli waited for the VMG deal to close, Agarwal repeatedly urged Better

1   Nutritionals to "stay the course" and maintain production capacity for Goli. In fact,

2   Goli claimed that its orders would rise by the end of the year and soon return to at

3   least 6 million bottles per month, then eventually reach 12 to 15 million bottles per

4   month. On information and belief, VMG was aware of those representations and both

5   Goli and VMG knew that those representations were false.

6        59.    Better Nutritionals relied on those false representations in the continued

7   conduct of its business. It later became clear that Goli's continued

8   misrepresentations and unwillingness to help Better Nutritionals reduce the losses

9   caused by Goli's breach of its commitments to purchase products it had ordered were

10   part of a plan to inflict unsustainable losses on Better Nutritionals and thereby to

11   force it into a sale of the Company  that would be to Goli's benefit.

12        60.    The VMG deal closed in October of 2021, resulting in a $100 million

13   purchase of a 4.5% equity stake which it purchased from Defendants Agarwal and

14   Bitensky. As a 3% owner of Goli, Sharon Hoffman said that he should have been

15   offered to participate *pari pasu* in the VMG purchase of equity. Agarwal agreed, but

16   on information and belief Goli never sought to include Sharon Hoffman in the sale of

17   equity. To justify that failure Defendant Agarwal represented to Sharon that VMG

18   would be having an Initial Public Offering in a few months, and that at that time

19   Better Nutritionals' stock in Goli would be worth much more than the current

20   valuation. That representation was knowingly false. On information and belief,

21   VMG was aware that Goli would make that representation and was aware of its

22   falsity. Goli claimed to have a valuation $2.5 billion, at that time. On informationa

23   and belief, that claim was knowingly false.

24        61.    Goli and VMG had a different plan in mind. Instead of an IPO in the

25   short term, Defendant Agarwal proposed that he could force Better Nutritionals into

26   a sale to a buyer who was committed to expanding Goli's business. Once that sale

27   occurred, the Goli could effectively claim the benefits of vertical integration and shift

28   to Goli the profits Better Nutritionals would earn under the existing arrangement.

62.     In furtherance of that plan, once the VMG deal closed, Goli presented Better Nutritionals with a sales forecast for the first half of 2022 of only ***600,000*** bottles per month, representing a 94% decline from the 9 million bottles per month Goli had claimed it would need just a few months earlier, and an 80% decline from the 3 million bottles per month in Goli's July 2021 sales forecast.

63.     Shortly thereafter, in November 2021, Yundi Liang, an employee of Better Nutritionals with a degree in food science and significant familiarity with Better Nutritionals confidential suppliers, and trade secret processes, left Better Nutritionals and shortly thereafter went to a competitor producer of gummy products, defendant Merical.   Apparently, unknown to the Hoffmans or Better Nutritionals, VMG and Goli were planning to divert production of Goli products from Better Nutritionals to Merical.

64.     Sometime thereafter, Better Nutritionals received a phone call from one of its vendors, Herbstreith & Fox, asking about an inquiry they received from a gummy manufacturer. The gummy manufacturer was Merical.  Merical asked about Pectin, one of the main raw materials Better Nutritionals uses. Herbstreith & Fox gave them over a dozen different options but they asked specifically for one option, which was the exact formulation Better Nutritionals purchased from Herbstreith & Fox. Merical referenced the item number specifically which is not a published number and is only known by Herbstreith & Fox and Better Nutritionals. This particular pectin was formulated specifically for Better Nutritionals due to its unique formulation requirement.

65.     Shortly before that call, a Production employee that worked for Merical for approximately 12 years, left Merical and was hired at Better Nutritionals as a production employee. This Production employee was at Better Nutritionals for 2 weeks, then left. Better Nutritionals confirmed that he went back to Merical.  As a production employee, he had access to Better Nutritionals' batch records, cooking sheets, recipes, and confidential information about suppliers.  At about the same

1  time, Better Nutritionals learned that Goli and Merical had called Better Nutritionals'
2  flavor supplier, Custom Flavors, and sought the exact flavor that Better Nutritionals
3  was using to manufacture the Goli gummies.

4       66.    In March of 2022, Sharon and Odelya Hoffman met for dinner with
5  Wayne Wu, one of the directors appointed by VMG to the Goli Board.  The next day,
6  Sharon and Odelya met with Johnathan Marshall, another director appointed by
7  VMG to the Goli Board.  In those meetings, Sharon and Odelya explained that Better
8  Nutritionals had been placed in an impossible position by Goli's repeated
9  misrepresentations about its need for product and continued refusal to honor its
10 purchase orders.

11      67.    Goli's failure to honor purchase orders was particularly acute with
12 respect to $18 million worth of Goli gummies that already had been manufactured
13 for Goli because those products have a limited shelf life.  The refusal to honor the
14 300 million bottle verbal  purchase order creates a particular problem because Better
15 Nutritionals has a penalty fee of 2 cents per bottle if Better Nutritionals fails to take
16 delivery of  the bottles.

17      68.    Following that meeting, instead of any effort to have Goli live up to its
18 obligations, VMG continued with its plan to shift production from Better Nutritionals
19 to Merical.  In breach of its obligations of confidentiality, and its fiduciary duties to
20 Better Nutritionals as a shareholder of Better Nutritionals, with the knowledge and
21 agreement of VMG and the Goli Board, Goli sought to enable Merical to unlawfully
22 use Better Nutritionals trade secret information in competition with Better
23 Nutritionals.

24      69.    In July of 2022, Agarwal and Bitensky visited Better Nutritionals'
25 Norco facility and informed Hoffman and Better Nutritionals' CFO and COO that
26 the terms of Goli's deal with VMG require Goli to work with other gummy
27 manufacturers to produce Goli-branded product.  The deal with VMG had been
28 finalized the prior October.  Apparently Goli and VMG waited to ensure that VMG

1  could obtain and use Better Nutritionals trade secrets before announcing this contract
2  term supposedly agreed to nearly a year earlier.  Goli did not plan to acquire gummy
3  products from Merical until October.  It then projected that it would buy 250,000
4  bottles of gummies from Merical in October 2021, and 500,000 bottles of gummies
5  from Merical  in November. We are unaware of the amount of purchases made in the
6  last year, but even at a steady state of the 500,000 November 2021 rate, that would
7  amount to 6 million bottles, and the total paid to Merical, rather than to Better
8  Nutritionals would be over $25 million.

9      **J. The Fallout and Substantial Harm That Goli, Agarwal, and Bitensky**
10         **Caused to Better Nutritionals**

11      70.     The consequences of Goli's precipitous drop in production demand
12  were swift, severe, predictable, and — according to the plan Goli engineered —
13  borne disproportionately by Better Nutritionals.  With monthly revenue plummeting,
14  Better Nutritionals now faced payment obligations for the Norco Lease, for IT
15  services and equipment, and to third-party suppliers of ingredients, materials, staff,
16  and packaging necessary to produce Goli's product, in addition to payroll and capital
17  improvement costs.  Better Nutritionals had been a significant driver of the local
18  economy but now had to layoff its valued employees.  Better Nutritionals had
19  incurred these obligations and hired these employees for the sole purpose of keeping
20  up with Goli's false sales forecasts and purchase orders.

21      71.     In September of 2021, Better Nutritionals had been valued at $1.35
22  billion.  As of this filing, Goli is seeking to force Better Nutritionals to take an offer
23  from a third-party buyer that values Better Nutritionals at under $90 million.. To
24  make matters worse, Better Nutritionals has had to contend with a looming financial
25  disaster without the lucrative business opportunities that it had terminated or turned
26  down at Goli's behest (such as Nestle, Garden of Life, Nature's Bounty, and Sports
27  Research). Goli has recently demanded a materially lower price-per-bottle.
28  Apparently, Goli understands that it pushed Better Nutritionals into a corner and now

1  believes that it can take what it wants, when it wants it,  and pay what it chooses to

2  pay and when it chooses to pay.

3       72.    Accordingly, Goli owes Better Nutritionals $180 million for orders that

4  it placed throughout 2022, including charges for finished goods for that Goli refuses

5  to accept.  Goli also owes Better Nutritionals tens of millions of dollars to Better

6  Nutritionals for raw materials, packaging, penalties, and storage costs, as well as for

7  the labor necessary to produce the massive monthly quantities in Goli's sales

8  forecasts and purchase orders. Under common law subrogation, therefore, Goli also

9  liable for over $100 million expended by Better Nutritionals in tenant improvements

10  and equipment purchases.

11  **FIRST CAUSE OF ACTION**

12  **(Defend Trade Secrets Act Against the Goli Defendants, the VMG**

13  **Defendants, and Merical)**

14       73.    Better Nutritionals incorporates each of the preceding paragraphs as if

15  fully set forth herein.

16       74.    Better Nutritionals was the owner of the above-mentioned trade secrets,

17  including but not limited to the processes it used to make its gummy products and

18  specific details and item numbers of custom produced supplies Better Nutritionals

19  ordered to produce its gummy products, suppliers and formulations.  Those trade

20  secrets  are "trade secrets" within the meaning of 18 U.S.C. §1839 (3).

21       75.    The Goli Defendants, the VMG Defendants and Defendant Merical

22  obtained and misappropriated those trade secrets by improper means within the

23  meaning of 18 U.S.C. §1839 (5) and (6).  Such misappropriation was willful and

24  malicious.

25       76.    Accordingly, pursuant to 18 U.S.C. § 1836 (b)(3) Better Nutritionals  is

26  entitled to an award of damages for actual loss caused by the misappropriation of the

27  trade secrets and damages for any unjust enrichment caused by the misappropriation

28  of the trade secrets that is not addressed in computing damages for actual loss, in an

amount to be proven at trial, but no less than $50 million, exemplary damages of two times the compensatory loss for additional damages of no less than $100 million, and attorneys' fees..

77.    Better Nutritionals is also entitled pursuant to 18 U.S.C. § 1836 (b)(2) to civil seizure of all product manufactured for Goli using Better Nutritional trade secrets injunctive relief pursuant to 18 U.S.C. § 1836 (b)(3)(A) prohibiting the Goli Defendants, the VMG Defendants and Merical or any other manufacturer supplying products to Goli from continuing to use Better Nutritionals trade secrets and prohibiting the continued employment by Merical of former employees of Better Nutritionals who had access to Better Nutritionals trade secrets.

## SECOND CAUSE OF ACTION

### (Fraudulent Misrepresentations against the Goli Defendants )

78.    Better Nutritionals incorporates each of the preceding paragraphs as if fully set forth herein.

79.    As a result of Better Nutritionals' reasonable reliance on the foregoing intentional fraudulent misrepresentations by the Goli Defendants, Better Nutritionals suffered monetary damages and Better Nutritionals' hard-earned reputation has been severely damaged causing damages that continue to increase and will be proven at trial but no less than $300 million.

## THIRD CAUSE OF ACTION

### (Aiding and abetting against the VMG  Defendants)

80.    Better Nutritionals incorporates each of the preceding paragraphs as if fully set forth herein.

81.    At all times commencing at least in July 2021, the VMG Defendants were aware of the Goli Defendants intentional fraudulent misrepresentations, and Goli's intention to defraud Better Nutritionals.  With that awareness, the VMG Defendants provided substantial assistance to Goli's efforts to defraud Better Nutritionals. That substantial assistance included the VMG Defendants' approval of

1   and, through its appointed directors on Goli's Board, participation in Goli's breaches

2   of its contractual obligations to Better Nutritionals, as well as Goli's intentional

3   violations of Better Nutritionals confidential information and trade secrets.

4         82.    As a result of the foregoing, the VMG Defendants are jointly and

5   severally liable for the damages incurred by Better Nutritionals damages that

6   continue to increase and will be proven at trial but no less than $300 million.

7                      **FOURTH  CAUSE OF ACTION**

8      **(Violation of the Racketeer Influenced and Corrupt Organizations Act**

9              **(RICO) against Goli, Agarwal, and Bitensky)**

10        83.    Better Nutritionals incorporates each of the preceding paragraphs as if

11   fully set forth herein.

12        84.    The RICO Defendants, Goli, Agarwal, and Bitensky, individually and

13   acting for one another and in concert with each other, have committed the

14   following predicate acts of "racketeering activity" within the meaning of 18

15   U.S.C. § 1961(1). The RICO Defendants have engaged in a "pattern of

16   racketeering activity" within the meaning of 18 U.S.C. § 1961(6) by numerous

17   acts of racketeering activity over a several year period.

18        85.    The intentionally fraudulent misrepresentations alleged above were

19   conveyed either by telephone, or by e-mail, or by other means of electronic

20   communication using the facilities of the internet.  Those fraudulent

21   misrepresentations therefore constitute wire fraud in violation of 18

22   U.S.C.§1343.

23        86.    The wrongful acts alleged constitute a pattern of racketeering activity

24   which occurred after January 1, 1992 and are within a 10 year period of each

25   other and this action as prescribed by 18 U.S.C. §1961(5).

26        87.    Throughout the relevant time period, Goli was an "enterprise" within

27   the meaning of 18 U.S.C. § 1961 (4).  In addition, the individual RICO

28

1  Defendants. acted as an association-in-fact and "enterprise" within the meaning

2  of 18 U.S.C. § 1961(4).

3  88.  The RICO Defendants have conducted and participated in, directly

4  or indirectly, the affairs of the enterprises described above through the pattern of

5  racketeering activity described above in violation of 18 U.S.C. § 1962(c). All RICO

6  defendants, exercised control over the above mentioned enterprises through the

7  acts of each other and in agreement and conspiracy with each other, as part of

8  their fraudulent scheme.  The RICO Defendants have conspired to violate 18

9  U.S.C. §§ 1962(a), and 1962(c) through a pattern of racketeering activities, in

10  violation of 18 U.S.C. § 1962(d).

11  89.  Better Nutritionals has been injured in its businesses and property

12  by reasonable reliance upon the false and fraudulent misrepresentations and

13  omissions to state material facts by the RICO Defendants, including, those set

14  forth and referred to above.

15  90.  Defendants have violated 18 U.S.C. §§ 1962(c) and 1962(d) and

16  as a proximate result of the aforesaid violations, plaintiffs have suffered

17  damages in the amounts of not less than $300 million, plus consequential

18  damages, in an aggregate amount to be proven at trial.

19  91.  By reason of such violations, the RICO Defendants are liable to

20  plaintiff for treble the damages sustained by Plaintiff, as well as Better

21  Nutritionals' costs of suit and reasonable attorneys' fees pursuant to RICO

22  §1962(c).

23  **FIFTH CAUSE OF ACTION**

24  **(Securities Fraud against Goli, Agarwal, and Bitensky)**

25  92.  Better Nutritionals brings this cause of action alternatively should the

26  Court determine that no breach occurred as pled in the Fifth Cause of Action.

27  93.  In engaging in the actions and course of conduct alleged with respect

28  to the Stock Swap, Goli, Agarwal, and Bitensky each, on more than one occasion,

used a manipulative and deceptive device or contrivance in connection with the purchase and or sale of securities; made untrue statements of material facts and omitted to state material facts necessary in order to make the statements, in light of the circumstances under which they were made, not misleading; and engaged in acts and manipulative practices which were intended by defendants to operate and did operate as a fraud or deceit upon Plaintiff, all in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5. In particular, the representation that 3% of Goli Inc. stock was equivalent in value to 25% of the ownership of Better Nutritionals was knowingly false and fraudulent. The issuance of promissory notes without any date on which the notes are due was a deceptive device or contrivance.

94. As a direct and proximate result of the violation of Section 10(b) and Rule 10b-5, Better Nutritionals sustained actual and incidental damages. Goli deprived Better Nutritionals of the profits to which Better Nutritionals is entitled to void the purchase by Goli of 25% of Better Nutritionals.

## SIXTH  CAUSE OF ACTION

**(Breach of Contract or Alternatively Breach of Output / Requirements Contract against Goli)**

95. Better Nutritionals incorporates each of the preceding paragraphs as if fully set forth herein.

96. At all relevant times, Agarwal and Bitensky were Goli's principals, were central to decision-making and day-to-day operations at Goli, routinely communicated with Better Nutritionals regarding matters material to this cause of action, and made material statements on which Better Nutritionals relied.

97. At all relevant times, Better Nutritionals and Goli were capable of contracting.

98.    At all relevant times, and at least as early as May of 2019, Better Nutritionals agreed to produce and Goli promised to purchase Goli-branded nutritional gummies in a quantity measured by the requirements that Goli provided from time to time, but at minimum the entire output that Better Nutritionals could produce.   Goli delivered to Better Nutritionals purchase orders that it has failed to honor that at this time amounting to $180 million.

99.    In addition, from time to time, Goli provided Better Nutritionals with sales forecasts and purchase orders that conveyed estimates of Goli's inventory requirements to serve as reasonable guideposts for Better Nutritionals as to production capacity and supplies.

100.   At all relevant times, Better Nutritionals put forth its best efforts in good faith to produce at least the quantity of bottles in each of Goli's sales forecasts and purchase orders by reserving production capacity, ordering ingredients, and beginning production immediately.

101.   Better Nutritionals performed all of its other duties, covenants, and promises under the Parties' agreement.

102.   Only Goli had actual knowledge of consumer demand for its products, and its resulting inventory needs.  This information was not available to Better Nutritionals.  Thus, Goli was obligated to act in good faith by submitting to Better Nutritionals sales forecasts and purchase orders that accurately conveyed Goli's inventory needs.  In violation of this obligation, Goli submitted sales forecasts and purchase orders to Better Nutritionals that did not reflect actual consumer demand for its products.  Indeed, at certain times, Goli knew that consumer demand for its products was declining, that it did not need and did not intend to accept the quantity of bottles in its sales forecasts and purchase orders.

103.   Goli was obligated to act in good faith by purchasing at a the agreed price per bottle Better Nutritionals' output of Goli-branded nutritional gummies, which Better Nutritionals produced in good faith based upon Goli's sales forecasts

1  and purchase orders.  In violation of these obligations, Goli failed to purchase Better
2  Nutritionals output of Goli-branded nutritional gummies.

3      104.   Goli breached its contracts with Better Nutritionals.  In addition, as a
4  direct and proximate result of Goli's bad faith, Better Nutritionals sustained actual
5  and incidental damages.  Goli deprived Better Nutritionals of the profits to which
6  Better Nutritionals would have been entitled had Goli performed under the contract
7  and caused Better Nutritionals to incur substantial and unavoidable costs to perform
8  under the contract such that it will not be able to reduce its damages by non-
9  performance.  Accordingly, damages are due to Better Nutritionals from Goli  in an
10 amount to be proven at trial of no less than $ 200 million.

## SEVENTH CAUSE OF ACTION

### (Legal Malpractice against DLA Piper)

13     105.   Better Nutritionals incorporates each of the preceding paragraphs as if
14 fully set forth herein.

15     106.    In acting as counsel for both Goli and also Better Nutritionals and
16 Sharon Hoffman, and failing to act to obtain and preserve critical rights of Better
17 Nutritionals and Sharon Hoffman, DLA Piper failed to exercise the ordinary
18 reasonable skill and knowledge commonly possessed by a member of the legal
19 profession. But for DLA Piper's malpractice, Plaintiff would not have been in the
20 position a) where Goli could refuse to pay for $180 million of product it had ordered,
21 b) where Goli could dramatically curtail its purchases from Better Nutritionals
22 substantial advance notice and without penalty, c) where Better Nutritionals paid all
23 lease expenses, tenant improvement expenses and purchases of equipment, but Goli
24 was able to retain its position as tenant and title to all equipment,  and d) where Goli
25 could shift production away from Better Nutritionals.  Accordingly, Plaintiff is
26 entitled to damages in an amount to be proven at trial but no less than $400 million.

27
28

107.    As a result of the foregoing, Plaintiffs have been damaged as a result of Defendant's malpractice in an amount to be determined at trial, but no less than $200 million.

### EIGHTH CAUSE OF ACTION

### (Breach of Fiduciary Duty against DLA Piper)

108.   Better Nutritionals incorporates each of the preceding paragraphs as if fully set forth herein.

109.   As counsel for Better Nutritionals, DLA Piper had fiduciary duties to its client.

110.    DLA Piper breached its fiduciary duty to Better Nutritionals when acting as counsel for both Goli and also Better Nutritionals and Sharon Hoffman, by placing the interests of Goli above the interests of Better Nutritionals and Sharon Hoffman and failing to act to obtain and preserve critical rights of Better Nutritionals and Sharon Hoffman. But for DLA Piper's breaches of its fiduciary duties to Better Nutritional,  Better Nutritionals  would not have been in the position a) where Goli could refuse to pay for $158 million of product it had ordered, b) where Goli could dramatically curtail its purchases from Better Nutritionals substantial advance notice and without penalty ,c) where Better Nutritionals paid all lease expenses, tenant improvement expenses and purchases of equipment, but Goli was able to retain its position as tenant and title to all equipment,  and d) where Goli could shift production away from Better Nutritionals.

111.    As a result of the foregoing, Plaintiffs have been damaged as a result of Defendant's malpractice in an amount to be determined at trial, but no less than $200 million.

### NINTH CAUSE OF ACTION

### (Subrogation against Goli)

112.   Better Nutritionals incorporates each of the preceding paragraphs as if fully set forth herein.

113.   As previously alleged, Goli is the tenant at the Norco facility, and the "customer" on the purchases of equipment, while Better Nutritionals is only the "guarantor" of those agreements.

114.   Accordingly, Better Nutritionals has a right of subrogation to recover over $100 million it expended as guarantor for the benefit of the tenant and the title holder to the manufacturing equipment at the Norco facility.

**WHEREFORE**, Better Nutritionals respectfully requests judgment against defendants and each of them as follows:

a)   As to the First Cause of Action (i) damages for actual loss caused by the misappropriation of the trade secrets, and (ii) damages for any unjust enrichment caused by the misappropriation of the trade secrets that is not addressed in computing damages for actual loss, collectively in an amount to be proven at trial but no less than $ 50 million together with (iii) exemplary damages of two times the compensatory loss (an additional $100 million) and (iv) attorneys' fees;

b)   As to the Second and Third Causes of Action for damages in an amount to be proven at trial, but no less than $300 million;

c)   As to the Fourth Cause of Action for treble the compensatory damages sustained by plaintiff of no less than $300 million, or $900 million as well  costs of suit and reasonable attorneys' fees;

d)   As to the Fifth Cause of Action for an order voiding Goli's acquisition of a 25% interest in Better Nutritionals;

e)   As to the Sixth Cause of action for damages in an amount to be proven at trial, but no less than $200 Million

f)   As to the Seventh and Eighth Cause of Action, for damages in an amount to be proven at trial, but no less than $200 million;

g)   As to the Ninth Cause of Action for damages in an amount to be proven at trial, but no less than $100 million.

1      h)     As to all Causes of Action, for costs, pre-judgment interest and

2 such other and further relief that the Court deems proper.

3

4 PLAINTIFF HEREBY DEMANDS A JURY TRIAL PURSUANT TO LOCAL

5 RULE 38-1.

6 DATED: December 18,  2022

7                         Respectfully Submitted,
                           Folkenflik & McGerity LLP

8                 By:___/s/ Max Folkenflik_____

9                         1500 Broadway, Suite 810
                         New York, New York 10036

10                       (212) 757-0400

11                       Email: mfolkenflik@fmlaw.net
                       *Attorneys for Plaintiff*

12

13                       ROSS L LIBENSON(State Bar No.
                       181912)

14                       LIBENSON LAW
                       1939 Harrison Street, Suite 917

15                       Oakland, CA 94612
                       Telephone: (510) 451-4441

16                       Email ross@libensonlaw.com
                       *Local Counsel*

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT